CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
**CHRISTIAN MORRIS TRIAL ATTORNEYS**
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
Telephone: (702) 434-8282
Facsimile: (702) 434-1488
christian@cmtrialattorneys.com
jamie@cmtrialattorneys.com
*Attorneys for Plaintiff*
-and-
ALANA L. MCMAINS (*Pro Hac Vice Forthcoming*)
California State Bar No. 285942
**MCMAINS LAW, APC**
402 W. Broadway Ste. 400
San Diego, California 92101-5030
Telephone: (619) 615-4229
alana@mcmainslaw.com
*Attorneys for Plaintiffs*

**CHRISTIAN MORRIS TRIAL ATTORNEYS**
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| G.G., an individual,<br><br>Plaintiff,<br><br>v.<br><br>CORECIVIC, INC.; CORECIVIC OF TENNESSEE, LLC; SETH BLOODWORTH, an individual; and DOES 1 through 10; ROE Corporations 11 through 20; ABC Limited Liability Companies 21-30, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff G.G., individually, by and through their counsel, Christian M. Morris, Esq., and Sarah E. DiSalvo, Esq., of the law firm Christian Morris Trial Attorneys and Alana L. McMains, Esq. of the law firm McMains Law, APC, for her causes of actions against Defendants above named, and each of them, complain and allege as follows:

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

## INTRODUCTION

CoreCivic, Inc. and CoreCivic of Tennessee, LLC demonstrated deliberate indifference and allowed for the sexual assault of prison inmates by prison staff to occur. CoreCivic, Inc. and CoreCivic of Tennessee, LLC were aware of the substantial risk of sexual assaults and created an environment within the prison that provided an opportunity for Defendant Seth Bloodworth to commit sexual assaults on Plaintiff G.G. Despite being one of the largest private prison companies in the United States, CoreCivic, Inc. and CoreCivic of Tennessee, LLC failed to implement adequate policies, procedures, and training to prevent sexual abuse, as mandated by the Prison Rape Elimination Act (hereinafter "PREA"). This systemic failure created an environment that enabled Seth Bloodworth to sexually assault Plaintiff G.G. CoreCivic, Inc. and CoreCivic of Tennessee, LLC's actions and inactions demonstrate a pattern of prioritizing profit over inmate safety and well-being, which led to the sexual assault of Plaintiff G.G, further resulting in the infliction of emotional distress, battery, and unlawful imprisonment as defined under Nevada law.

## PARTIES

1. Plaintiff G.G. (hereinafter "Plaintiff") was at all times relevant hereto an incarcerated individual in the custody of the Federal Bureau of Prisons (hereinafter "BOP") and was domiciled in North Carolina.

2. Pursuant to PREA, Plaintiff is identified by initials to safeguard her privacy and maintain confidentiality.

3. Defendant CORECIVIC, INC. (hereinafter "Defendant CoreCivic"), is a Foreign Corporation incorporated under the laws of the State of Maryland, and at all times relevant hereto was doing business in Nye County, Nevada.

4. Defendant CORECIVIC OF TENNESSE, LLC (hereinafter "Defendant CoreCivic of TN"), is a Foreign Limited-Liability Company incorporated under the laws of the State of Maryland, and at all times relevant was doing business in Nye County, Nevada.

5. Defendant Seth Bloodworth (hereinafter "Defendant Bloodworth") was at all times relevant hereto an individual domiciled in Clark County, Nevada.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

6. Plaintiff is informed, believes and thereon alleges that all of the acts, omissions and conduct described below of each and every Defendant was duly authorized, ordered, and directed by the respective and collective Defendant corporate employers, officers, and management-level employees of said corporate employers. In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents and representatives and each of them; and upon completion of the aforesaid acts and conduct of said corporate employees, agents and representatives, the Defendant corporations, respectively and collectively, ratified, accepted the benefits of, condoned, lauded, acquiesced, approved, and consented to each and every of the said acts and conduct of the aforesaid corporate employees, agents and representatives.

7. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants designated herein as DOES 1 through 10; ROE CORPORATIONS 11 through 20, and ABC LIMITED LIABILITY COMPANIES 21 through 30, ("DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants"), inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this Complaint accordingly, and reserve the right to do so at the appropriate time.

8. Plaintiffs are informed, believe, and thereon allege that DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants are responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiffs as hereinafter alleged.

9. Plaintiffs are informed, believe and thereon allege that DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants were involved in the initiation, approval, support or execution of the wrongful acts upon which this litigation is premised, or of similar actions against Plaintiffs of which Plaintiffs are presently unaware or without adequate knowledge.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

**STATEMENT OF JURISDICTION AND VENUE**

10. This Federal District Court has jurisdiction over this civil tort action pursuant to 28 U.S.C. § 1332 because there exists complete diversity of citizenship of Plaintiff and The CoreCivic Defendants, Defendant CoreCivic of TN, and Defendant Bloodworth.

11. This Federal District Court has jurisdiction over this civil tort action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00.

12. This Federal District Court has jurisdiction over this civil tort action pursuant to 28 U.S.C. § 1332 as the occurrence giving rise to this case took place in Nye County, Nevada, and Defendant CoreCivic and Defendant CoreCivic of TN are registered to do business in the State of Nevada.

13. In the alternative, this Court has specific personal jurisdiction over the Defendants because Plaintiff's claims against these Defendants arise out of or relate to a contact between Defendants at the State of Nevada. Plaintiff was sexually assaulted at the Nevada Southern Detention Center (hereinafter "NSDC") in Pahrump, Nevada, and her claims against the Defendants arise from and directly relate to those occurrences within the State of Nevada.

14. Upon information and belief, this Court has personal jurisdiction over DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants as they are residents and/or maintained a principal place of business in the State of Nevada.

15. Upon information and belief, this Court has personal jurisdiction over DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants worked in the State of Nevada and thus had continuous and systematic contacts with the State of Nevada.

16. Upon information and belief, this Court has personal jurisdiction over DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants because Plaintiff's claims arise from and directly relate to her sexual assault that occurred at NSDC in Nye County, Nevada, where the DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES were employed and/or maintained a principal place of business.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

**EXHAUSTION**

17. Plaintiff has exhausted all administrative remedies available to her as required under 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act (PLRA).

**GENERAL ALLEGATIONS**

18. Defendant CoreCivic and Defendant CoreCivic of TN (collectively, "The CoreCivic Defendants") own, occupy, operate, control, maintain, and/or manage certain real property located at 2190 E Mesquite Ave, Pahrump, NV 89060, commonly known as Nevada Southern Detention Center (hereinafter "NSDC").

19. Upon information and belief, the U.S. Bureau of Prisons ("BOP") contracts with private prisons due to overcrowding in its own facilities.

20. Upon information and belief, the BOP has a contract with the CoreCivic Defendants to house BOP inmates at the NSDC in Pahrump, Nevada. Many of the CoreCivic Defendants' facilities, including NSDC, also house immigrants being detained by Immigration and Customs Enforcement ("ICE").

21. The CoreCivic Defendants, one of the largest private prison companies in the United States, has a long and extensively documented history of systemic abuse and mistreatment of incarcerated individuals.

22. The CoreCivic Defendants demonstrate yearly financial success, paying out dividends to shareholders rather than prioritizing the protection of the people it holds in custody.

23. The CoreCivic Defendants' prioritization of profits of people have resulted in inadequate safety measures, inadequate medical care, forced labor, insufficient staffing, substandard living conditions, untrained staff, and a culture that enables physical assault, sexual assault, and rape.

24. The CoreCivic Defendants have received multiple reports of physical assault, sexual assault, and rape at NSDC. After internal investigations conducted by the CoreCivic Defendants occurred, such reports were marked as "unfounded." The frequency and severity of these assaults have raised serious concerns about the safety and security measures in place at

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

NSDC, as well as raised concerns about the effectiveness and transparency of the CoreCivic Defendants' self-monitoring and investigative practices.

25. The CoreCivic Defendants have received multiple reports by detainees of NSDC of delayed or denied access to medical care, medication errors, abuse by staff, denial of access to legal services, and language barriers preventing effective communication between detainees and staff.

26. The CoreCivic Defendants' facility NSDC has been investigated by governmental entities for concerns of unsafe conditions and systemic civil rights violations.

27. Despite the numerous reports and investigations, the CoreCivic Defendants' internal audits consistently claim that NSDC meets standards and that such reports are "unfounded," raising questions about the effectiveness and transparency of the CoreCivic Defendants' self-monitoring and investigative practices.

28. In or around April of 2023, Defendant Bloodworth was employed and/or contracted by the CoreCivic Defendants as a Correctional Officer.

29. In or around April of 2023, Plaintiff was a detainee at NSDC. Plaintiff was expected to be at NSDC for a short period, as she was in the process of being transferred to Federal Correctional Institute ("FCI") Dublin in Dublin, California.

30. During her detention at NSDC, Plaintiff was subjected to substandard living conditions that violated basic standards of hygiene and comfort. Specifically, Plaintiff's uniform was only cleaned once per week, forcing her to wear unsanitary clothing for extended periods. Due to the excessive heat within the facility, Plaintiff and other detainees were also compelled to wear only boxer shorts and t-shirts, which were ill fitting and inappropriate, particularly for female detainees.

31. In or around April of 2023, Defendant Bloodworth initiated inappropriate contact with Plaintiff by singling her out for unwanted attention. Specifically, Defendant Bloodworth began to walk past Plaintiff's unit, attempt communication, and watch Plaintiff. This behavior marked the beginning of a pattern of inappropriate and dangerous misconduct.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

32. In or around April of 2023, Defendant Bloodworth informed Plaintiff that he had researched her case online and expressed his personal opinion that he believed Plaintiff's prison sentence was excessive.

33. In or around May of 2023, Defendant Bloodworth began issuing inappropriate, unwanted requests to Plaintiff, such as asking her to fetch items for him within the kitchen.

34. In or around May of 2023, Defendant Bloodworth initiated covert, unwanted communication with Plaintiff by secretly passing her notes containing explicit comments about Plaintiff's body.

35. In or around May of 2023, Defendant Bloodworth began making verbal lewd, unwanted remarks about Plaintiff's physical appearance during routine activities, such as telling Plaintiff that her "ass looked good bending over to use the microwave."

36. In or around May of 2023, Defendant Bloodworth's comments became more sexually aggressive. Defendant Bloodworth would tell Plaintiff that he wanted to see what she looked like during sex and that he wanted to "put a baby in her."

37. In or around April and May of 2023, Plaintiff experienced persistent anxiety and fear due to Defendant Bloodworth's escalating misconduct. Plaintiff lived in constant fear of Defendant Bloodworth's unwanted visits and attempts at physical intimacy.

38. In or around May or June of 2023, Plaintiff retrieved a mop from the utility closet as part of her assigned cleaning duties. Defendant Bloodworth, exploiting his position of authority, followed Plaintiff into the closet and closed the door, effectively trapping her inside. Without warning or consent, Defendant Bloodworth proceeded to remove his pants and began masturbating in front of Plaintiff. The situation then escalated as Defendant Bloodworth physically restrained Plaintiff and forcibly kissed her against her will.

39. Thereafter, Plaintiff made concerted efforts to avoid further contact with Defendant Bloodworth. Plaintiff employed various strategies to minimize interactions, including feigning sleep or engaging in activities with other inmates so she would never be caught alone. Despite these efforts, Defendant Bloodworth's harassment persisted.

///

40. In or around May of 2023, Defendant Blood began fabricating reasons to visit or observe Plaintiff; engaging in unwanted physical contact, such as pulling Plaintiff's hair as she lay in bed; and abusing his authority by ordering Plaintiff to his desk unnecessarily. Defendant Bloodworth also continued to make sexually explicit comments about Plaintiff's body, including remarks about her breasts while she slept.

41. In or around May or June of 2023, Defendant Bloodworth escalated his pattern of sexual abuse against Plaintiff through a premeditated act of rape. Defendant Bloodworth summoned Plaintiff to the front desk under the guise of official business, then ordered her to follow him into the utility closet. Fearing retaliation if she refused, Plaintiff complied. Once isolated, Defendant Bloodworth sexually assaulted Plaintiff through non-consensual kissing, penetration, and forced sexual contact. Despite Plaintiff's attempts to resist, Defendant Bloodworth forcibly turned her around, partially disrobed her, and proceeded to rape her. The assault was interrupted only when Defendant Bloodworth's walkie-talkie activated, at which point he abruptly ceased and departed.

42. Throughout Plaintiff's detention at NSDC, Defendant Bloodworth engaged in a pattern of repeated sexual assaults against Plaintiff, in addition to the aforementioned incidents. These sexual assaults occurred in the utility closet, with Defendant Bloodworth either pursuing Plaintiff into the closet or coercing her to accompany him there. On multiple occasions, when Plaintiff attempted to draw attention by making noise, Defendant Bloodworth resorted to physical abuse, including pinching her nipples, to silence her. Based on Plaintiff's recollection, Defendant Bloodworth sexually assaulted her in the utility closet on at least five (5) separate occasions.

43. Plaintiff felt unable to report Defendant Bloodworth's actions to the CoreCivic Defendants or DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants for two primary reasons: Defendant Bloodworth had disclosed that multiple family members were employed at NSDC, implying potential retaliation within the institution; and Defendant Bloodworth made veiled threats suggesting connections to drug dealers who lived near Plaintiff's family, insinuating that he could orchestrate harm to her loved ones if she

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

reported his behavior. These circumstances created a coercive environment that effectively silenced Plaintiff, leaving her vulnerable to continued abuse.

44. In or around May or June of 2023, Plaintiff was scheduled to transfer out of NSDC to FCI in Dublin, California. Approximately one (1) week before Plaintiff's scheduled transfer, Defendant Bloodworth inappropriately provided Plaintiff with his personal phone number and home address, expressing a desire to maintain contact. When Plaintiff discarded this information, Defendant Bloodworth became enraged.

45. Thereafter, Defendant Bloodworth began making explicit threats to Plaintiff, stating he was "not done with her" and presented her with two coercive options to leave NSDC and face unspecified consequences, or self-harm to be placed on suicide watch, thereby preventing Plaintiff's transfer. To reinforce these threats, Defendant Bloodworth revealed that he had violated Plaintiff's privacy by monitoring her phone calls, demonstrating knowledge of her children's names and her family's location. This pattern of intimidation led Plaintiff to believe that she or her family would be in danger if she did not comply with Defendant Bloodworth's demands, effectively using his position of authority to manipulate and control Plaintiff's actions

46. Thereafter, Defendant Bloodworth coerced Plaintiff into self-harm to prevent her transfer from NSDC. Defendant Bloodworth illicitly provided Plaintiff with a small blade and instructed her on a "safe" area to cut herself. This act promptly resulted in guards intervening and Plaintiff being placed on suicide watch, preventing Plaintiff from transferring facilities. Critically, Plaintiff was unable to report Bloodworth's misconduct while on suicide watch due to the presence of Bloodworth's sister as the supervising officer, further demonstrating the extent of Bloodworth's influence within the facility and the systemic failures that enabled his continued abuse.

47. Thereafter, Plaintiff returned to her unit and was informed that her transfer to FCI Dublin, California had been delayed by one month due to missing the scheduled transfer window.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

48. Following these events, Plaintiff felt coerced into maintaining a non-consensual "relationship" with Defendant Bloodworth. Any attempts by Plaintiff to resist or end this "relationship" were met with veiled threats from Defendant Bloodworth. In one instance, when Defendant Bloodworth summoned Plaintiff from her room late at night and she made noise that alerted others, he threatened her, saying, "Behave or I'll show you how to behave." This ongoing pattern of coercion and threats further demonstrates the abusive nature of Defendant Bloodworth's actions, and the hostile environment Plaintiff was forced to endure.

49. In or around June of 2023, Defendant Bloodworth escalated his abusive behavior by attempting to coerce Plaintiff into participating in drug smuggling activities within the facility. Defendant Bloodworth crudely inquired if Plaintiff had experience concealing contraband in her vagina, suggesting it as a method for smuggling drugs. Defendant Bloodworth then tried to entice Plaintiff by emphasizing the potential financial gain, exploiting his knowledge of her limited financial support from family. Despite these manipulative tactics and the implicit threat of his authority, Plaintiff consistently refused Bloodworth's propositions, explicitly stating her unwillingness to risk extending her incarceration by engaging in such illegal activities.

50. In or around June of 2023, Plaintiff was once again set to be transferred to FCI Dublin in Dublin, California. Defendant Bloodworth, continuing his pattern of manipulation, urged Plaintiff to self-harm to prevent the transfer. Refusing to comply, Plaintiff attempted to dissuade Defendant Bloodworth by highlighting the increased risk of detection if she returned to suicide watch. Plaintiff falsely promised to maintain contact with him from Dublin to secure his acquiescence. Ultimately, Defendant Bloodworth relented but provided Plaintiff with his contact information, expecting her to communicate with him post-transfer.

51. In or around June or July of 2023, within a week of her arrival at FCI Dublin, Plaintiff received a letter from Defendant Bloodworth. This was the first of several inappropriate letters Plaintiff would receive from Defendant Bloodworth.

52. Thereafter, Defendant Bloodworth escalated his inappropriate behavior by utilizing the FreePrints app to send Plaintiff unsolicited photographs of himself. Defendant

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

Bloodworth further violated professional boundaries by initiating multiple video calls with Plaintiff, during which he made explicit sexual requests, such as asking her to touch herself or shake her buttocks for his gratification, and masturbated off-camera while conversing with Plaintiff, demonstrating a clear pattern of sexual harassment and misconduct.

53. Despite her fear of retaliation against herself and her family, Plaintiff took the courageous step of reporting Defendant Bloodworth's sexual abuse and harassment to a Special Investigative Services (SIS) officer at FCI Dublin. As evidence, Plaintiff provided the officer with two letters written by Bloodworth and approximately six photos he had sent her. The SIS officer assured Plaintiff that he would address the matter. However, in a troubling display of institutional negligence, no one from FCI Dublin ever followed up with Plaintiff regarding her report of abuse, leaving her vulnerable and her concerns unaddressed.

54. Following these events, Plaintiff ceased responding to any further attempts at communication from Defendant Bloodworth. As a result of Plaintiff's silence, Defendant Bloodworth eventually discontinued his efforts to contact her.

55. Following up on her complaint, Plaintiff contacted the Special Investigative Services (SIS) officer at FCI Dublin to inquire about the lack of action regarding her situation. The SIS officer informed Plaintiff that his role was limited to receiving complaints, and he was not responsible for conducting investigations.

56. Following Plaintiff's report of Defendant Bloodworth's misconduct, she received one additional letter from him; they have had no further contact. Nevertheless, the impact of the sexual assault and sexual harassment continued to affect Plaintiff and persists to this day.

57. The CoreCivic Defendants, despite knowledge of the substantial risk of sexual assaults in the prison context, created an environment within the prison that provided the opportunity for its employee Defendant Bloodworth, a correctional officer at NSDC, to harm Plaintiff.

58. Defendant Bloodworth took advantage of his position at NSDC to prey on the vulnerable, incarcerated women ostensibly under his care. Defendant Bloodworth sexually assaulted Plaintiff on numerous occasions. The CoreCivic Defendants allowed these sexual

assaults to occur, through its failure to comply with its duties under the PREA, its failure to implement its own preemptive policies despite being aware of the high risk of sexual assaults in its facilities, its negligent supervision of the individuals in its care, and its negligent hiring, supervision, and retention of Bloodworth.

59. As a result of Defendants' actions, Plaintiff suffered numerous and substantial emotional, physical, and personal injuries that continue to affect her today, and likely will for the rest of her life.

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

**(Against All Defendants)**

60. Plaintiff repeats and re-alleges each and every preceding allegation as though fully set forth herein.

61. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants, owed a duty of reasonable care to Plaintiff to protect her from harm, including sexual assault and harassment, while she was detained at NSDC. This duty arose from the following

a. The CoreCivic Defendants' contractual obligations with the U.S. Bureau of Prisons (BOP) and other government entities to provide safe and secure housing for inmates.

b. The CoreCivic Defendants' legal obligations under PREA to prevent, detect, and respond to sexual abuse within their facilities.

c. The CoreCivic Defendants' inherent responsibility as the operator of a detention facility to safeguard the well-being of those in their custody.

62. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES maintained a special relationship with Plaintiff, giving rise to a heightened duty of care. The special relationship between a detention facility and its detainees creates a legal duty to protect them from foreseeable harm, including the foreseeable risk of sexual abuse by staff.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

63. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants had a duty to maintain a safe and secure environment for inmantes, including taking measures to prevent violence, sexual assault, and other forms of abuse, pursuant to NAC 209.259.

64. The CoreCivic Defendants and DOE Director of the Department of Correction Defendant had a duty to ensure that each detainee receive humane treatment and be provided with adequate food, clothing, bedding, medical care, and other necessities essential to the health and well-being of the detainees, pursuant to NRS 209.371.

65. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants breached their duty of care to Plaintiff by failing to implement and enforce adequate policies, procedures, and training to prevent sexual abuse, as mandated by PREA.

66. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants breached their duty of care to Plaintiff by creating and maintaining a dangerous environment within NSDC that enabled Defendant Bloodworth to sexually assault and harass Plaintiff.

67. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants breached their duty of care to Plaintiff by failing to adequately monitor and supervisor staff-inmate interactions, allowing Defendant Bloodworth to exploit his position and abuse Plaintiff.

68. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants breached their duty of care to Plaintiff by ignoring or downplaying reports of sexual abuse and harassment within NSDC, fostering a culture of impunity for perpetrators.

69. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants breached their duty of care to Plaintiff by failing to conduct thorough and impartial investigations into allegations of sexual misconduct, hindering the detection and prevention of further abuse.

70. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants breached their duty of care to Plaintiff by failing to implement sufficient security measures at NSDC. Specifically, Defendants failed to provide adequate security camera coverage, resulting in unmonitored areas within the facility. This created a "safe haven" for perpetrators like Defendant Bloodworth and facilitated the sexual assaults against Plaintiff. The lack of camera coverage demonstrated a reckless disregard for Plaintiff's safety and directly contributed to the environment in which the abuse occurred.

71. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants breached their duty to maintain a safe and secure environment for inmates, including taking measures to prevent violence, sexual assault, and other forms of abuse, pursuant to NAC 209.259.

72. The CoreCivic Defendants and DOE Director of the Department of Correction Defendant breached their duty to ensure that each detainee receive humane treatment and be provided with adequate food, clothing, bedding, medical care, and other necessities essential to the health and well-being of the detainees, pursuant to NRS 209.371.

73. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants breached their duty to maintain a safe and secure environment for inmates, pursuant to PREA, 28 CFR 115.61-62, which mandates staff and agency reporting duties regarding sexual abuse and sexual harassment.

74. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants breached their duty to maintain a safe and secure environment for inmates, pursuant to PREA, 28 CFR 115.31, which outlines employee training requirements on prevention, detection, reporting, and response to sexual abuse and sexual harassment.

75. Plaintiff was a member of the class of persons for whose protection said aforementioned statutes, ordinances, and regulations were enacted and promulgated.

76. Plaintiff sustained injuries of the type that said statutes, ordinances, and regulations were intended to prevent.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

77. Under the doctrine of negligence per se, the violation of these laws and regulations constitutes a breach of duty owed to Plaintiff by Defendants, which were the actual and proximate cause of each of Plaintiff's injuries.

78. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants knew or should have known of the high risk of staff-on-inmate sexual abuse, and thus had a responsibility take steps to mitigate risk of such sexual abuse. The CoreCivic Defendants were acutely aware of the heightened risk of sexual assault faced by female inmates, stemming from multiple sources, as the CoreCivic Defendants possessed direct knowledge of prior incidents involving sexual assault of female inmates within their network of detention centers. This awareness imposed upon the CoreCivic Defendants a heightened duty to implement robust preventative measures and protect Plaintiff from foreseeable harm, which the CoreCivic Defendants failed to implement.

79. Defendant Bloodworth, as a correctional officer employed by the CoreCivic Defendants at NSDC, owed a duty of care to Plaintiff to ensure her safety and well-being while she was in his custody. This duty included, but was not limited to, refraining from engaging in any form of sexual abuse, harassment, or exploitation, and adhering to all professional standards and ethical guidelines governing his conduct as a correctional officer.

80. Defendant Bloodworth's position of authority and control over Plaintiff created a special relationship that imposed upon him a heightened duty to protect her from harm, including the foreseeable risk of sexual assault.

81. Defendant Bloodworth breached his duty of care to Plaintiff through a series of egregious and intentional acts, including but not limited to initiating inappropriate contact with Plaintiff, making sexually suggestive comments and advances towards her, engaging in unwanted physical contact, coercing her into a non-consensual relationship, sexually assaulting her on multiple occasions, and attempting to involve her in illegal activities within the facility.

82. Defendant Bloodworth further breached his duty of care by threatening Plaintiff and her family, coercing her into self-harm, and continuing to harass her even after she was transferred to a different facility. These actions constitute a clear and flagrant violation of the

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

trust placed in Defendant Bloodworth as a correctional officer and directly caused Plaintiff to suffer severe and ongoing physical, emotional, and psychological harm

83. Defendant Bloodworth's family members (hereinafter "DOE Bloodworth Defendants") who were also employed as correctional officers at NSDC by the CoreCivic Defendants owed a duty of care to Plaintiff to ensure her safety and well-being while she was in his custody. The DOE Bloodworth Defendants include, but are not limited to, Defendant Bloodworth's sister, "Miss. Blo."

84. DOE Bloodworth Defendants breached their duty of care by being aware of Defendant Bloodworth's behavior and pattern of abuse and failing to intervene or report Defendant Bloodworth's conduct.

85. DOE Bloodworth Defendants knew or should have known of Defendant Bloodworth's dangerous propensities.

86. DOE Bloodworth Defendants, specifically "Miss. Blo", told Plaintiff that Defendant Bloodworth was a "pervert" and knew or should have known of Defendant Bloodworth's dangerous actions toward Plaintiff.

87. Defendants demonstrated deliberate indifference in their breaches of duties, as listed above. This deliberate indifference is evidenced by Defendants' systemic failure to implement adequate policies, procedures, and training to prevent sexual abuse, despite being one of the largest private prison companies in the United States and mandated to comply with the PREA. This failure created an environment that enabled Defendant Bloodworth to sexually assault Plaintiff.

88. The CoreCivic Defendants' actions and inactions reveal a pattern of prioritizing profit over inmate safety and well-being, leading to Plaintiff's sexual assault and the subsequent infliction of emotional distress, battery, and unlawful imprisonment. This deliberate indifference to the known risks of sexual assault within NSDC constitutes a conscious disregard for Plaintiff's rights and safety, further justifying punitive damages.

89. Defendants acted with malice and oppression toward Plaintiff, and in conscious disregard of the harm to Plaintiff. This malice is demonstrated through Defendants' knowing

disregard for Plaintiff's safety, allowing Defendant Bloodworth to exploit his position of authority to sexually assault, harass, and threaten Plaintiff. This was done for Defendants' personal benefit or malicious and reckless disregard of Plaintiff's rights. Despite the numerous investigations, complaints, and a history of problems at NSDC, Defendants[2] knowingly continued the practices that placed Plaintiff in imminent and foreseeable danger, revealing a callous disregard for human life.

90. By prioritizing profits over safety, Defendants showed a reckless indifference to the high likelihood that Plaintiff and other inmates would be subjected to sexual abuse and mistreatment. The actions of Defendants were despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights. It is a violation of social duties that injured Plaintiff and warrants the imposition of punitive damages. These actions are so shocking that they cannot be tolerated by society and should be condemned.

91. As a direct and proximate result of Defendants' negligence and deliberate indifference, Plaintiff suffered severe and ongoing damages, including but not limited to significant emotional distress, psychological trauma, anxiety, depression, fear, loss of trust, difficulty sleeping, nightmares, flashbacks, and an inability to function normally in social settings and relationships.

92. The actions and inactions of Defendants', their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff to suffer these damages. Plaintiff is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

93. As the actual, direct, proximate, and legal result of the acts and omissions of Defendant, Plaintiff has been damaged in an amount in excess of $75,000.00.

94. As a direct and proximate result of the above-mentioned acts and/or omissions, Plaintiff has had to retain the services of CHRISTIAN MORRIS TRIAL ATTORNEYS and MCMAINS LAW, APC to pursue this action and is entitled to recover costs of suit and reasonable attorney's fees incurred therein.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

**SECOND CAUSE OF ACTION**

**NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION**

**(Against The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants)**

95. Plaintiff repeats and re-alleges each and every preceding allegation as though fully set forth herein.

96. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES had a duty to exercise reasonable care in the hiring, training, supervision, and retention of their employees, including correctional officers like Defendant Bloodworth. This duty included, but was not limited to:

a. Conducting thorough background checks and psychological evaluations of potential employees to identify individuals with a history of violence, sexual misconduct, or abuse of authority.

b. Providing comprehensive training to correctional officers on professional ethics, PREA compliance, proper use of force, and the prevention and reporting of sexual abuse.

c. Implementing effective policies and procedures for monitoring and supervising staff-inmate interactions to prevent abuse and maintain professional boundaries.

d. Promptly and thoroughly investigating all reports of employee misconduct, sexual abuse, and PREA violations.

e. Taking appropriate disciplinary action against employees found to have engaged in misconduct, including termination when warranted.

f. Providing ongoing training and education to correctional officers on PREA compliance, sexual abuse prevention, and best practices for maintaining a safe and secure environment for inmates.

g. Regularly reviewing and updating their policies and procedures to ensure they are effective in preventing and addressing sexual abuse.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

97. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES breached these duties by failing to properly monitor, assess, and address widespread problems involving female inmates being sexually assaulted.

98. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES breached these duties by failing to sufficient train its employees.

99. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES breached these duties by failing to provide sufficient security measures at NSDC, including but not limited to providing adequate camera coverage.

100. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES breached these duties by failing to properly screen potential employees, failing to research the backgrounds, histories, qualifications, and competence of employees that were hired.

101. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES breached these duties by failing to properly discipline and terminate employees who engaged in misconduct.

102. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES had additional mandatory statutory duties of care to Plaintiff based on PREA regulations to protect Plaintiff from the known risk of sexual assault, harassment, and abuse. These duties required them to provide proper training and supervision of correctional officers and to take adequate steps to prevent, detect, and investigate allegations of sexual abuse.

103. Upon information and belief, the CoreCivic Defendants breached their duty of care to Plaintiff by negligently hiring, training, supervising, and/or retaining Defendant Bloodworth, including but not limited to:

a. Failing to conduct an adequate background check on Defendant Bloodworth prior to hiring him, which would have revealed his propensity for misconduct and abuse of authority.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

b. Failing to provide Defendant Bloodworth with adequate training on professional ethics, PREA compliance, and proper boundaries with inmates.

c. Failing to adequately supervise Defendant Bloodworth's interactions with Plaintiff and other female inmates.

d. Failing to take appropriate disciplinary action against Defendant Bloodworth despite his pattern of inappropriate behavior and escalating misconduct.

e. Retaining Defendant Bloodworth as a correctional officer despite his documented history of misconduct and the known risk he posed to inmates.

f. Failing to implement adequate policies, procedures, and training to prevent sexual abuse, as mandated by PREA.

g. Failing to adequately monitor and supervise staff-inmate interactions, allowing Defendant Bloodworth to exploit his position and abuse Plaintiff.

h. Ignoring or downplaying reports of sexual abuse and harassment within NSDC, fostering a culture of impunity for perpetrators.

i. Failing to conduct thorough and impartial investigations into allegations of sexual misconduct, hindering the detection and prevention of further abuse.

104. The CoreCivic Defendants further breached their duty of care to Plaintiff by negligently hiring, training, supervising, and/or retaining Doe Bloodworth Defendants who were aware of Defendant Bloodworth's behavior and pattern of abuse and failed to intervene or report Defendant Bloodworth's conduct.

105. Defendants demonstrated deliberate indifference in their breaches of duties, as listed above. This deliberate indifference is evidenced by Defendants' systemic failure to implement adequate policies, procedures, and training to prevent sexual abuse, despite being one of the largest private prison companies in the United States and mandated to comply with the PREA. This failure created an environment that enabled Defendant Bloodworth to sexually assault Plaintiff.

106. The CoreCivic Defendants' actions and inactions reveal a pattern of prioritizing profit over inmate safety and well-being, leading to Plaintiff's sexual assault and the subsequent

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

infliction of emotional distress, battery, and unlawful imprisonment. This deliberate indifference to the known risks of sexual assault within NSDC constitutes a conscious disregard for Plaintiff's rights and safety, further justifying punitive damages.

107. Defendants acted with malice and oppression toward Plaintiff, and in conscious disregard of the harm to Plaintiff. This malice is demonstrated through Defendants' knowing disregard for Plaintiff's safety, allowing Defendant Bloodworth to exploit his position of authority to sexually assault, harass, and threaten Plaintiff. This was done for Defendants' personal benefit or malicious and reckless disregard of Plaintiff's rights. Despite the numerous investigations, complaints, and a history of problems at NSDC, Defendants knowingly continued the practices that placed Plaintiff in imminent and foreseeable danger, revealing a callous disregard for human life.

108. By prioritizing profits over safety, Defendants showed a reckless indifference to the high likelihood that Plaintiff and other inmates would be subjected to sexual abuse and mistreatment. The actions of Defendants were despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights. It is a violation of social duties that injured Plaintiff and warrants the imposition of punitive damages. These actions are so shocking that they cannot be tolerated by society and should be condemned.

109. As a direct and proximate result of Defendants' negligence and deliberate indifference, Plaintiff suffered severe and ongoing damages, including but not limited to significant emotional distress, psychological trauma, anxiety, depression, fear, loss of trust, difficulty sleeping, nightmares, flashbacks, and an inability to function normally in social settings and relationships.

110. The actions and inactions of Defendants', their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff to suffer these damages. Plaintiff is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

///

111. As the actual, direct, proximate, and legal result of the acts and omissions of Defendant, Plaintiff has been damaged in an amount in excess of $75,000.00.

112. As a direct and proximate result of the above-mentioned acts and/or omissions, Plaintiff has had to retain the services of CHRISTIAN MORRIS TRIAL ATTORNEYS and MCMAINS LAW, APC to pursue this action and is entitled to recover costs of suit and reasonable attorney's fees incurred therein.

**THIRD CAUSE OF ACTION**

**ASSAULT**

**(Against All Defendants)**

113. Plaintiff repeats and re-alleges each and every preceding allegation as though fully set forth herein.

114. Defendant Bloodworth, while acting within the scope of his employment and under the color of his authority as a correctional officer at NSDC, intentionally engaged in conduct that placed Plaintiff in reasonable apprehension of immediate harmful or offensive contact, such as:

a. Verbally threatening Plaintiff with physical harm and/or sexual violence.
b. Making unwanted advances toward Plaintiff.
c. Cornering Plaintiff in confined spaces, such as the utility closet, creating a sense of imminent danger.
d. Engaging in gestures or actions that reasonably indicated an intent to commit battery against Plaintiff.
e. Threatening Plaintiff and her family, coercing her into self-harm, and continuing to harass her even after she was transferred to a different facility.

115. Plaintiff had a reasonable apprehension that she was in danger of immediate harmful or offensive contact as a result of Defendant Bloodworth's actions.

116. Plaintiff did not consent to Defendant Bloodworth's conduct, nor could she validly consent given the inherent power imbalance and coercive environment within the correctional setting.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

117. As Defendant Bloodworth's employers, the CoreCivic Defendants are vicariously liable for his tortious conduct under the doctrine of *respondeat superior*. Defendant Bloodworth's actions occurred within the scope of his employment, as he used his position and authority as a correctional officer to gain access to Plaintiff and carry out the assaults. Furthermore, the CoreCivic Defendants' negligent hiring, training, supervision, and retention of Defendant Bloodworth directly contributed to his ability to commit these tortious act.

118. Defendants demonstrated deliberate indifference in their breaches of duties, as listed above. This deliberate indifference is evidenced by Defendants' systemic failure to implement adequate policies, procedures, and training to prevent sexual abuse, despite being one of the largest private prison companies in the United States and mandated to comply with the PREA. This failure created an environment that enabled Defendant Bloodworth to sexually assault Plaintiff.

119. The CoreCivic Defendants' actions and inactions reveal a pattern of prioritizing profit over inmate safety and well-being, leading to Plaintiff's sexual assault and the subsequent infliction of emotional distress, battery, and unlawful imprisonment. This deliberate indifference to the known risks of sexual assault within NSDC constitutes a conscious disregard for Plaintiff's rights and safety, further justifying punitive damages.

120. Defendants acted with malice and oppression toward Plaintiff, and in conscious disregard of the harm to Plaintiff. This malice is demonstrated through Defendants' knowing disregard for Plaintiff's safety, allowing Defendant Bloodworth to exploit his position of authority to sexually assault, harass, and threaten Plaintiff. This was done for Defendants' personal benefit or malicious and reckless disregard of Plaintiff's rights. Despite the numerous investigations, complaints, and a history of problems at NSDC, Defendants knowingly continued the practices that placed Plaintiff in imminent and foreseeable danger, revealing a callous disregard for human life.

121. By prioritizing profits over safety, Defendants showed a reckless indifference to the high likelihood that Plaintiff and other inmates would be subjected to sexual abuse and mistreatment. The actions of Defendants were despicable conduct that subjected Plaintiff to

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

cruel and unjust hardship in conscious disregard of her rights. It is a violation of social duties that injured Plaintiff and warrants the imposition of punitive damages. These actions are so shocking that they cannot be tolerated by society and should be condemned.

122. As a direct and proximate result of Defendants' negligence and deliberate indifference, Plaintiff suffered severe and ongoing damages, including but not limited to: significant emotional distress, psychological trauma, anxiety, depression, fear, loss of trust, difficulty sleeping, nightmares, flashbacks, and an inability to function normally in social settings and relationships.

123. The actions and inactions of Defendants', their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff to suffer these damages. Plaintiff is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

124. As the actual, direct, proximate, and legal result of the acts and omissions of Defendant, Plaintiff has been damaged in an amount in excess of $75,000.00.

125. As a direct and proximate result of the above-mentioned acts and/or omissions, Plaintiff has had to retain the services of CHRISTIAN MORRIS TRIAL ATTORNEYS and MCMAINS LAW, APC to pursue this action and is entitled to recover costs of suit and reasonable attorney's fees incurred therein.

## FOURTH CAUSE OF ACTION

## BATTERY

## (Against All Defendants)

126. Plaintiff repeats and re-alleges each and every preceding allegation as though fully set forth herein.

127. Defendant Bloodworth, while acting within the scope of his employment and under the color of his authority as a correctional officer at NSDC, intentionally caused harmful and offensive contact to Plaintiff. These contacts included, but were not limited to, unwanted touching, grabbing, and pinching, all of which constituted a battery under Nevada law.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

128. Defendant Bloodworth further acted with the specific intent to cause harmful and offensive contact to Plaintiff. These instances included, but were not limited to, forced kissing, simulated sexual acts, and the act of rape in the utility closet. These actions resulted in direct, harmful, and offensive contact with Plaintiff's body, constituting a separate and distinct battery.

129. Defendant Bloodworth's actions created an imminent apprehension of harmful and offensive contact in Plaintiff. The constant threats, harassment, and unwanted advances instilled a reasonable fear in Plaintiff that she would be subjected to further sexual abuse and physical harm. This fear, coupled with the offensive contact that did occur, further supports the claim of battery.

130. Defendant Bloodworth's offensive contact was of such a nature that it would offend a reasonable sense of personal dignity and lacked any legitimate penological justification. As a correctional officer, Defendant Bloodworth had a responsibility to maintain professional boundaries and ensure the safety and well-being of the inmates under his supervision. Defendant Bloodworth's deliberate and malicious actions violated these standards and demonstrate a reckless disregard for Plaintiff's rights and dignity.

131. Plaintiff did not consent to being touched in such a manner, nor could she validly consent given the inherent power imbalance and coercive environment within the correctional setting. As an inmate, Plaintiff was in a position of vulnerability and dependence, making it impossible for her to freely and voluntarily consent to any form of sexual contact with a correctional officer. Ultimately, any purported "consent" obtained by Defendant Bloodworth was the product of coercion, duress, and abuse of authority.

132. As Defendant Bloodworth's employers, the CoreCivic Defendants are vicariously liable for his tortious conduct under the doctrine of *respondeat superior*. Defendant Bloodworth's actions occurred within the scope of his employment, as he used his position and authority as a correctional officer to gain access to Plaintiff and carry out the batteries. Furthermore, the CoreCivic Defendants' negligent hiring, training, supervision, and retention of Defendant Bloodworth directly contributed to his ability to commit these tortious acts.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

133. Defendants demonstrated deliberate indifference in their breaches of duties, as listed above. This deliberate indifference is evidenced by Defendants' systemic failure to implement adequate policies, procedures, and training to prevent sexual abuse, despite being one of the largest private prison companies in the United States and mandated to comply with the PREA. This failure created an environment that enabled Defendant Bloodworth to sexually assault Plaintiff.

134. The CoreCivic Defendants' actions and inactions reveal a pattern of prioritizing profit over inmate safety and well-being, leading to Plaintiff's sexual assault and the subsequent infliction of emotional distress, battery, and unlawful imprisonment. This deliberate indifference to the known risks of sexual assault within NSDC constitutes a conscious disregard for Plaintiff's rights and safety, further justifying punitive damages.

135. Defendants acted with malice and oppression toward Plaintiff, and in conscious disregard of the harm to Plaintiff. This malice is demonstrated through Defendants' knowing disregard for Plaintiff's safety, allowing Defendant Bloodworth to exploit his position of authority to sexually assault, harass, and threaten Plaintiff. This was done for Defendants' personal benefit or malicious and reckless disregard of Plaintiff's rights. Despite the numerous investigations, complaints, and a history of problems at NSDC, Defendants knowingly continued the practices that placed Plaintiff in imminent and foreseeable danger, revealing a callous disregard for human life.

136. By prioritizing profits over safety, Defendants showed a reckless indifference to the high likelihood that Plaintiff and other inmates would be subjected to sexual abuse and mistreatment. The actions of Defendants were despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights. It is a violation of social duties that injured Plaintiff and warrants the imposition of punitive damages. These actions are so shocking that they cannot be tolerated by society and should be condemned.

137. As a direct and proximate result of Defendants' negligence and deliberate indifference, Plaintiff suffered severe and ongoing damages, including but not limited to: significant emotional distress, psychological trauma, anxiety, depression, fear, loss of trust,

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

difficulty sleeping, nightmares, flashbacks, and an inability to function normally in social settings and relationships.

138. The actions and inactions of Defendants', their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff to suffer these damages. Plaintiff is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

139. As the actual, direct, proximate, and legal result of the acts and omissions of Defendant, Plaintiff has been damaged in an amount in excess of $75,000.00.

140. As a direct and proximate result of the above-mentioned acts and/or omissions, Plaintiff has had to retain the services of CHRISTIAN MORRIS TRIAL ATTORNEYS and MCMAINS LAW, APC to pursue this action and is entitled to recover costs of suit and reasonable attorney's fees incurred therein.

**FIFTH CAUSE OF ACTION**

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**(Against ALL Defendants)**

141. Plaintiff repeats and re-alleges each and every preceding allegation as though fully set forth herein.

142. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES owed a duty of care to Plaintiff to refrain from conduct that would foreseeably cause her severe emotional distress, which arose from its legal obligations under PREA to prevent, detect, and respond to sexual abuse within their facilities and its contractual obligations with BOP. The CoreCivic Defendants' responsibility as the operator of NSDC is to safeguard the well-being of those in their custody.

143. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES breached this duty of care by engaging in negligent conduct, such as failing to implement and enforce adequate policies, procedures, and training to prevent sexual abuse, as mandated by PREA.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

144. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES breached this duty of care by creating and maintaining a dangerous environment within NSDC that enabled Defendant Bloodworth to sexually assault and harass Plaintiff.

145. The CoreCivic Defendants and DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES breached this duty of care by failing to monitor and supervise staff-inmate interactions, allowing Defendant Bloodworth to exploit his position and abuse Plaintiff.

146. Defendant Bloodworth owed a duty of care to Plaintiff, as a correctional officer employed by the CoreCivic Defendants, to ensure her safety and well-being while she was in custody at NSDC.

147. Defendant Bloodworth breached his duty of care by initiating inappropriate contact with Plaintiff, making sexually suggestive comments and advances towards her, engaging in unwanted physical contact, coercing her into a non-consensual relationship, and attempting to involve her in illegal activities within the facility.

148. The CoreCivic Defendants, as Defendant Bloodworth's employers, are vicariously liable for his tortious conduct under the doctrine of *respondeat superior*. Defendant Bloodworth's actions occurred within the scope of his employment, as he used his position and authority as a correctional officer to gain access to Plaintiff and carry out the outrageous acts.

149. Further, the CoreCivic Defendants are directly liable for these harms as a result of failing to supervise, train, and retain competent correctional officers. The CoreCivic Defendants knew or should have known of the threat Defendant Bloodworth posed to Plaintiff.

150. The CoreCivic Defendants are independently liable for their own outrageous conduct in creating and maintaining a dangerous environment at NSDC that facilitated Defendant Bloodworth's abuse. Their systemic failures to comply with PREA, adequately staff and train personnel, and properly investigate and address reports of sexual abuse demonstrate a reckless disregard for the well-being of inmates in their custody. This outrageous conduct directly contributed to Plaintiff's severe emotional distress.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

151. Defendants demonstrated deliberate indifference in their breaches of duties, as listed above. This deliberate indifference is evidenced by Defendants' systemic failure to implement adequate policies, procedures, and training to prevent sexual abuse, despite being one of the largest private prison companies in the United States and mandated to comply with the PREA. This failure created an environment that enabled Defendant Bloodworth to sexually assault Plaintiff.

152. The CoreCivic Defendants' actions and inactions reveal a pattern of prioritizing profit over inmate safety and well-being, leading to Plaintiff's sexual assault and the subsequent infliction of emotional distress, battery, and unlawful imprisonment. This deliberate indifference to the known risks of sexual assault within NSDC constitutes a conscious disregard for Plaintiff's rights and safety, further justifying punitive damages.

153. Defendants acted with malice and oppression toward Plaintiff, and in conscious disregard of the harm to Plaintiff. This malice is demonstrated through Defendants' knowing disregard for Plaintiff's safety, allowing Defendant Bloodworth to exploit his position of authority to sexually assault, harass, and threaten Plaintiff. This was done for Defendants' personal benefit or malicious and reckless disregard of Plaintiff's rights. Despite the numerous investigations, complaints, and a history of problems at NSDC, Defendants[2] knowingly continued the practices that placed Plaintiff in imminent and foreseeable danger, revealing a callous disregard for human life.

154. By prioritizing profits over safety, Defendants showed a reckless indifference to the high likelihood that Plaintiff and other inmates would be subjected to sexual abuse and mistreatment. The actions of Defendants were despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights. It is a violation of social duties that injured Plaintiff and warrants the imposition of punitive damages. These actions are so shocking that they cannot be tolerated by society and should be condemned.

155. As a direct and proximate result of Defendants' negligence and deliberate indifference, Plaintiff suffered severe and ongoing damages, including but not limited to: significant emotional distress, psychological trauma, anxiety, depression, fear, loss of trust,

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

difficulty sleeping, nightmares, flashbacks, and an inability to function normally in social settings and relationships.

156. The actions and inactions of Defendants', their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff to suffer these damages. Plaintiff is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

157. As the actual, direct, proximate, and legal result of the acts and omissions of Defendant, Plaintiff has been damaged in an amount in excess of $75,000.00.

158. As a direct and proximate result of the above-mentioned acts and/or omissions, Plaintiff has had to retain the services of CHRISTIAN MORRIS TRIAL ATTORNEYS and MCMAINS LAW, APC to pursue this action and is entitled to recover costs of suit and reasonable attorney's fees incurred therein.

**SIXTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Against ALL Defendants)**

159. Plaintiff repeats and re-alleges each and every preceding allegation as though fully set forth herein.

160. Defendant Bloodworth, while acting within the scope of his employment as a correctional officer for the CoreCivic Defendants at NSDC, engaged in willful and outrageous misconduct that transcended the bounds of what is considered acceptable in a civilized society. His actions were shocking, egregious, and utterly intolerable, exceeding all possible limits of decency. These acts included, but were not limited to:

a. Making sexual comments and requesting sexual favors;

b. Explicitly threatening Plaintiff's safety and that of her family members;

c. Engaging in multiple incidents of sexual battery.

d. Forcibly raping Plaintiff while at his workplace.

e. Suggesting that Plaintiff smuggle drugs into the facility.

f. Providing Plaintiff with a weapon to injure herself.

g. Monitoring Plaintiff's telephone calls to gather her personal information.

h. Violating and taking advantage of Plaintiff and her place in society.

i. All other actions previously mentioned in this complaint.

161. Defendant Bloodworth's conduct was intentional and malicious, designed to inflict severe emotional distress upon Plaintiff.

162. Defendant Bloodworth acted with reckless disregard of causing severe emotional distress to Plaintiff, consciously disregarding the high probability that his actions would cause her extreme mental and emotional suffering. Defendant Bloodworth knew of Plaintiff's vulnerable state as an incarcerated individual and exploited his position of power to subject her to a campaign of terror, sexual abuse, and psychological manipulation.

163. The severe emotional distress suffered by Plaintiff was objectively reasonable and foreseeable, given the nature and circumstances of Defendant Bloodworth's actions. The distress experienced by Plaintiff was so severe that no reasonable person could be expected to endure it.

164. The CoreCivic Defendants, as Defendant Bloodworth's employers, are vicariously liable for his tortious conduct under the doctrine of *respondeat superior*. Defendant Bloodworth's actions occurred within the scope of his employment, as he used his position and authority as a correctional officer to gain access to Plaintiff and carry out the outrageous acts.

165. Further, the CoreCivic Defendants are directly liable for these harms as a result of failing to supervise, train, and retain competent correctional officers. The CoreCivic Defendants knew or should have known of the threat Defendant Bloodworth posed to Plaintiff.

166. The CoreCivic Defendants are independently liable for their own outrageous conduct in creating and maintaining a dangerous environment at NSDC that facilitated Defendant Bloodworth's abuse. Their systemic failures to comply with PREA, adequately staff and train personnel, and properly investigate and address reports of sexual abuse demonstrate a reckless disregard for the well-being of inmates in their custody. This outrageous conduct directly contributed to Plaintiff's severe emotional distress.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

167. Defendants demonstrated deliberate indifference in their breaches of duties, as listed above. This deliberate indifference is evidenced by Defendants' systemic failure to implement adequate policies, procedures, and training to prevent sexual abuse, despite being one of the largest private prison companies in the United States and mandated to comply with the PREA. This failure created an environment that enabled Defendant Bloodworth to sexually assault Plaintiff.

168. The CoreCivic Defendants' actions and inactions reveal a pattern of prioritizing profit over inmate safety and well-being, leading to Plaintiff's sexual assault and the subsequent infliction of emotional distress, battery, and unlawful imprisonment. This deliberate indifference to the known risks of sexual assault within NSDC constitutes a conscious disregard for Plaintiff's rights and safety, further justifying punitive damages.

169. Defendants acted with malice and oppression toward Plaintiff, and in conscious disregard of the harm to Plaintiff. This malice is demonstrated through Defendants' knowing disregard for Plaintiff's safety, allowing Defendant Bloodworth to exploit his position of authority to sexually assault, harass, and threaten Plaintiff. This was done for Defendants' personal benefit or malicious and reckless disregard of Plaintiff's rights. Despite the numerous investigations, complaints, and a history of problems at NSDC, Defendants' knowingly continued the practices that placed Plaintiff in imminent and foreseeable danger, revealing a callous disregard for human life.

170. By prioritizing profits over safety, Defendants showed a reckless indifference to the high likelihood that Plaintiff and other inmates would be subjected to sexual abuse and mistreatment. The actions of Defendants were despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights. It is a violation of social duties that injured Plaintiff and warrants the imposition of punitive damages. These actions are so shocking that they cannot be tolerated by society and should be condemned.

171. As a direct and proximate result of Defendants' negligence and deliberate indifference, Plaintiff suffered severe and ongoing damages, including but not limited to: significant emotional distress, psychological trauma, anxiety, depression, fear, loss of trust,

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

difficulty sleeping, nightmares, flashbacks, and an inability to function normally in social settings and relationships.

172. The actions and inactions of Defendants', their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff to suffer these damages. Plaintiff is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

173. As the actual, direct, proximate, and legal result of the acts and omissions of Defendant, Plaintiff has been damaged in an amount in excess of $75,000.00.

174. As a direct and proximate result of the above-mentioned acts and/or omissions, Plaintiff has had to retain the services of CHRISTIAN MORRIS TRIAL ATTORNEYS and MCMAINS LAW, APC to pursue this action and is entitled to recover costs of suit and reasonable attorney's fees incurred therein.

**SEVENTH CAUSE OF ACTION**

**FALSE IMPRISONMENT**

**(Against all Defendants)**

175. Plaintiff repeats and re-alleges each and every preceding allegation as though fully set forth herein.

176. Defendant Bloodworth, while acting within the scope of his employment as a correctional officer for the CoreCivic Defendants, intentionally and unlawfully confined Plaintiff without her consent and within boundaries fixed by him. This confinement occurred on multiple occasions, including but not limited to the incidents described as the First Sexual Assault and the Second Sexual Assault.

177. On each occasion, Defendant Bloodworth used his position of authority to order Plaintiff into the utility closet under the guise of official business. Once Plaintiff was inside, Defendant Bloodworth would follow her in, close the door behind them, and position himself between Plaintiff and the only exit. No other individuals were present in the closet during these incidents.

178. On one or more occasions, when Plaintiff attempted to leave the utility closet, Defendant Bloodworth used physical force, threats, and intimidation to prevent her from doing so. This force included, but was not limited to, blocking her path, grabbing her, and using his size and physical presence to create a barrier that she could not overcome without risking further harm. These acts of physical restraint and coercion further establish the element of unlawful confinement.

179. During these periods of confinement, Defendant Bloodworth sexually assaulted Plaintiff, further emphasizing her inability to escape and the totality of her confinement.

180. Plaintiff was acutely aware of her confinement at the time it occurred. Plaintiff experienced fear, distress, and a clear understanding that her freedom of movement was completely restricted by Defendant Bloodworth's actions.

181. The confinement of Plaintiff was not justified by any legal process or authority. As a correctional officer, Defendant Bloodworth had no legitimate penological reason to confine Plaintiff in an isolated area for extended periods.

182. The CoreCivic Defendants, as Defendant Bloodworth's employers, are vicariously liable for his tortious conduct under the doctrine of *respondeat superior*. Defendant Bloodworth's actions occurred within the scope of his employment, as he used his position and authority as a correctional officer to facilitate the false imprisonment of Plaintiff.

183. During these incidents of unlawful confinement, Defendant Bloodworth subjected Plaintiff to sexual assault and harassment, using the isolation and restricted environment to carry out his abusive acts. These acts further demonstrate the CoreCivic Defendants.

184. Furthermore, the CoreCivic Defendants are directly liable for the false imprisonment of Plaintiff due to their negligent hiring, training, and supervision of Defendant Bloodworth. Their failure to implement adequate security measures, such as proper camera coverage and staff monitoring, directly contributed to Defendant Bloodworth's ability to falsely imprison Plaintiff.

///

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

185. Defendants demonstrated deliberate indifference in their breaches of duties, as listed above. This deliberate indifference is evidenced by Defendants' systemic failure to implement adequate policies, procedures, and training to prevent sexual abuse, despite being one of the largest private prison companies in the United States and mandated to comply with the PREA. This failure created an environment that enabled Defendant Bloodworth to sexually assault Plaintiff.

186. The CoreCivic Defendants' actions and inactions reveal a pattern of prioritizing profit over inmate safety and well-being, leading to Plaintiff's sexual assault and the subsequent infliction of emotional distress, battery, and unlawful imprisonment. This deliberate indifference to the known risks of sexual assault within NSDC constitutes a conscious disregard for Plaintiff's rights and safety, further justifying punitive damages.

187. Defendants acted with malice and oppression toward Plaintiff, and in conscious disregard of the harm to Plaintiff. This malice is demonstrated through Defendants' knowing disregard for Plaintiff's safety, allowing Defendant Bloodworth to exploit his position of authority to sexually assault, harass, and threaten Plaintiff. This was done for Defendants' personal benefit or malicious and reckless disregard of Plaintiff's rights. Despite the numerous investigations, complaints, and a history of problems at NSDC, Defendants knowingly continued the practices that placed Plaintiff in imminent and foreseeable danger, revealing a callous disregard for human life.

188. By prioritizing profits over safety, Defendants showed a reckless indifference to the high likelihood that Plaintiff and other inmates would be subjected to sexual abuse and mistreatment. The actions of Defendants were despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights. It is a violation of social duties that injured Plaintiff and warrants the imposition of punitive damages. These actions are so shocking that they cannot be tolerated by society and should be condemned.

189. As a direct and proximate result of Defendants' negligence and deliberate indifference, Plaintiff suffered severe and ongoing damages, including but not limited to: significant emotional distress, psychological trauma, anxiety, depression, fear, loss of trust,

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)

difficulty sleeping, nightmares, flashbacks, and an inability to function normally in social settings and relationships.

190. The actions and inactions of Defendants', their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff to suffer these damages. Plaintiff is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

191. As the actual, direct, proximate, and legal result of the acts and omissions of Defendant, Plaintiff has been damaged in an amount in excess of $75,000.00.

192. As a direct and proximate result of the above-mentioned acts and/or omissions, Plaintiff has had to retain the services of CHRISTIAN MORRIS TRIAL ATTORNEYS and MCMAINS LAW, APC to pursue this action and is entitled to recover costs of suit and reasonable attorney's fees incurred therein.

**PRAYER FOR RELIEF**

Plaintiff G.G. prays for judgment as follows:

1) For damages in excess of $75,000.00 for medical expenses, pain and suffering, permanent injury, disfigurement, anguish and fear, and lost wages;
2) For punitive damages;
3) For pre- and post-judgment interest as permitted by law;
4) For costs and attorney's fees and costs as permitted by law; and
5) For such other and further relief as the Court deems necessary and proper.

///

///

///

///

///

///

///

**DEMAND FOR JURY TRIAL**

Pursuant to FRCP 38, Plaintiff hereby demands trial by jury on all issues raised in this action.

DATED this 10th day of February 2025.

CHRISTIAN MORRIS TRIAL ATTORNEYS

/s/ *Sarah E. DiSalvo*

CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
*Attorneys for Plaintiff*
-and-
ALANA L. MCMAINS
(*Pro Hac Vice Forthcoming*)
California State Bar No. 285942
**MCMAINS LAW, APC**
402 W. Broadway Ste. 400
San Diego, California 92101-5030
Telephone: (619) 615-4229
alana@mcmainslaw.com
*Attorneys for Plaintiffs*

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, NV 89074
(702) 434-8282 / (702) 434-1488 (fax)